HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAROL LORRAINE TUCKER,

    Plaintiff,

  v.

UNITED STATES POSTAL SERVICE,

    Defendant.

Case No.  3:20-cv-05537-RAJ

ORDER

## I.  INTRODUCTION

Before the Court are three motions: Plaintiff's Request Regarding Summons (Dkt. # 34), Plaintiff's Request for Explanation (Dkt. # 37), and Plaintiff's 10-05-2020 New Emergency Filing (Dkt. # 40).  For the reasons below, all three motions are **DENIED**.

## II.  BACKGROUND

To date, Plaintiff Carol Lorraine Tucker has filed three "emergency filings."  Dkt. ## 9, 29, 40.  The instant motion, entitled 10-05-20 New Emergency Filing, is her third.  Dkt. # 40.  In all three filings, Ms. Tucker requested that Defendant United States Postal Service ("USPS") be enjoined to handle and distribute her mail in the manner that she prefers.  On each occasion, USPS has construed her "emergency filing" as a motion for a temporary restraining order ("TRO").  Dkt. ## 18, 32, 42.  The Court has similarly construed each "emergency filing" as a motion for a TRO (Dkt. ## 21, 36) and will continue to do so here (Dkt. # 40).

ORDER – 1

According to Ms. Tucker, she has had trouble with the Ocean Shores Post Office for many years now. Dkt. # 7-5 at 2-8.[1] Earlier this year, one disagreement brought her to federal court when USPS refused to deliver a parcel to her front door. *Id.* at 8. By way of background, at the time of the disagreement Ms. Tucker did not have her mail sent to a street address. Dkt. # 19 ¶ 2. Instead, she had her mail sent to a post office box at the Ocean Shores Post Office. *Id.* Packages too large for her post office box were placed in a parcel locker. *Id.* And packages too large for the parcel locker would be held for personal pick up in the post office lobby. *Id.* In May 2020, Ms. Tucker received a package that was too large for a parcel locker. *See* Dkt. # 7-5 at 8. Given that she is an immunocompromised senior with multiple chronic illnesses (Dkt. ## 7-1, 7-2, 7-3, 7-4) and given the COVID-19 pandemic, Ms. Tucker refused to retrieve the large package from the post office lobby (Dkt. # 19-1 at 5; *see* Dkt. # 7-5 at 9, 11).

In response, USPS offered a few accommodations. Rather than retrieve the package from the lobby, USPS proposed that a clerk could take the package directly to Ms. Tucker's vehicle to limit contact. Dkt. # 19-1 at 6. Ms. Tucker insisted, however, that such packages be delivered to her door. *Id.* at 3. Later, USPS informed Ms. Tucker that if she installed a mailbox, any large parcels addressed to her street address could be delivered to her home. Dkt. # 19-2 at 2. Alternatively, Ms. Tucker could arrange dual delivery, in which she would retain her current post office box but also install a curbside mail box and instruct her senders to deliver her mail to either address. *Id.* If those accommodations did not work, she could also provide her post office box key to another person to retrieve her packages on her behalf. *Id.* at 3-4. Finally, USPS offered to have large parcels taken out to her car and placed in the back seat or trunk to limit personal

---

[1] Nearly all of Ms. Tucker's representations of fact are contained in her various motions and an exhibit to her Complaint entitled "Facts and History of Case." Dkt. # 7-5. These representations are not contained in a sworn declaration under the penalty of perjury. In any event, for purposes of this motion, the Court assumes that Ms. Tucker's representations (those of which are not contradicted by other available evidence) are true.

ORDER – 2

contact. *Id.* at 4.

Ms. Tucker had a mailbox installed, but she insisted that all large packages be delivered to her front door, whether they were addressed to her street address or post office box address. Dkt. # 19 ¶¶ 9, 11. This USPS could not do because the Postal Service must deliver a package to the address that the package is addressed to. *Id.* ¶ 9.

### A. First Request for a TRO

On June 26, 2020, Ms. Tucker filed her first request for a TRO. Dkt. # 9. The request cited no law and contained no analysis. *See id.* But it did explain how Ms. Tucker wanted her mail handled at the time and did ask the Court for an injunction to reify her wants. She requested that "all parcels, whether addressed to [her] street address or post office box be delivered to a parcel locker" and "parcels too large for a parcel locker, whether addressed to [her] street address or post office box be delivered to [her] front door" among other things. *Id.* at 2. Judge Ronald B. Leighton, then presiding, denied the request. Dkt. # 21. He concluded that Ms. Tucker failed to meet any of the prerequisites for a TRO. *Id.* at 3. She had not shown why she was likely to succeed on her Section 504 accommodation claim given that USPS offered her several accommodations, though they were not as far-reaching as she wanted. *Id.* He also found that Ms. Tucker failed to satisfy the remaining prongs of the TRO analysis, likelihood of irreparable harm, balance of the equities, and public interest. *Id.* at 4. Ms. Tucker moved for reconsideration (Dkt. # 23) but the motion was denied for being untimely and without merit (Dkt. # 26).

### B. Second Request for a TRO

After her first motion for TRO was denied, the case was transferred to the undersigned. Ms. Tucker believed that the transfer warranted yet another request for a TRO and submitted a new "[e]mergency [f]iling in the hopes that Judge Jones will give it the attention and justice it and [she] deserve[s]." Dkt. # 29. Apart from the change in judges, it appeared that Ms. Tucker's circumstances were identical as when she filed her

ORDER – 3

first request for a TRO.  Like her previous request, Ms. Tucker cited no law and contained no analysis.  *See* Dkt. # 29.  This TRO request, however, proposed another, slightly different arrangement for her mail.  *Id.* at 2.  She asked the Court to enjoin USPS to "[i]mmediately resume delivering street-addressed mail to [her] post office box," to "[i]mmediately refrain from delivering all [her] parcels in the same small parcel locker, #7014," and more.  Dkt. # 29 at 2.  The Court denied the request.  Dkt. # 36.  It explained that these issues had already been raised and decided in Ms. Tucker's first TRO request, that the Court's previous order was the law of the case, and that Ms. Tucker had not raised anything new to deviate from the Court's first denial order.  *Id.*

      **C.**      **Third Request for a TRO**

About one month later, Ms. Tucker filed the instant motion, her third request for a TRO.  Dkt. # 40.  Like the last two failed requests, Ms. Tucker's motion cited no case law and contained no analysis.  *See id.*  This time, however, she says that she fell and is further inhibited from walking to her street mailbox, which contains a medical prescription.  *Id.*  This third request proposed yet another arrangement for her mail: she asked that the Court enjoin USPS to now "[i]mmediately refrain from delivering all [her] parcels in the same small parcel locker, #7014, and deliver [her] parcels in a parcel locker as close to Post Office Box 1473 as possible," "[i]mmediately refrain from forcing parcels into a small parcel locker that should be delivered to a larger parcel locker," and more.  Dkt. # 40 at 2.  USPS opposed the motion.  Dkt. # 42.[2]

### III.  DISCUSSION

Before the Court addresses Ms. Tucker's request for a TRO, it must address her two other motions, Request Regarding Summons (Dkt. # 34) and Request for Explanation (Dkt. # 37).

---

[2] Separately, Ms. Tucker also claimed that USPS placed the wrong parcel locker key in her post office box.  Dkt. # 40.  USPS admitted that this was a mistake and rectified it by placing the correct key in her post office box.  Dkt. # 43 ¶¶ 2, 3.

ORDER – 4

### A. Request Regarding Summons

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Rule 4 of the Federal Rules of Civil Procedure]." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Rule 4 sets forth both the timing and method of service. Under Rule 4(m), a plaintiff must serve a defendant with a summons and complaint within 90 days after the complaint is filed. Fed. R. Civ. P. 4. If the defendant is not served within that time, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.* Likewise, Rule 4(i) specifies how agencies of the United States must be served. *Id.*

The time for Ms. Tucker to serve USPS expired more than a month ago. Ms. Tucker's complaint was filed on June 26, 2020 (Dkt. # 7) resulting in a service deadline of September 24, 2020. That date has since passed, and Ms. Tucker has not filed a proof of service. She claims that she mailed the summons to the United States Department of Justice and the USPS Postmaster General via priority mail. Dkt. # 34. She now asks the Court to deem service satisfied or waived. *Id.*

Under Rule 4(i), however, Ms. Tucker's service attempt falls short: she used priority mail, not registered or certified mail, and she did not serve the United States Attorney for the Western District of Washington. Fed. R. Civ. P. 4(i). But because Ms. Tucker has tried to substantially comply with Rule 4 and because she is proceeding *in forma pauperis*, this Court will construe her request as a request for an order that service be made by a United States marshal, which the Court must grant. *Id.* 4(c)(3). And the Court finds good cause to extend the time limit for service an additional 30 days from the date of this Order.

Thus, the Court **DENIES** Ms. Tucker's Request Regarding Summons (Dkt. # 34) insofar as it seeks a ruling from the Court that service has been satisfied or waived. And

ORDER – 5

the Court orders the United States marshal or deputy marshal to serve Defendant with a copy of the summons and complaint within 30 days of the entry of this order.

### B. Request for Explanation

As explained above, after this matter was transferred to the undersigned, Ms. Tucker filed her second request for a TRO. Dkt. # 29. The Court denied the request. Dkt. # 36. Soon after, Ms. Tucker filed a "Request for Explanation," asking the Court to justify its denial order. Ms. Tucker does not base her request on any rule or authority, and the Court has found nothing to suggest that it must justify its reasoning beyond what was contained in the previous order. In any event, the Court will construe Ms. Tucker's request as a motion for reconsideration.

Motions for reconsideration are disfavored under the Local Rules for the Western District of Washington. Local Rules W.D. Wash. LCR 7(h)(1). Thus, "in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence," such motions will ordinarily be denied. *Id.* In her request, Ms. Tucker introduces no new facts and identifies no new legal authority. She has also not shown manifest error. She argues that letters from six healthcare providers have shown that she will suffer irreparable harm if her mail is not delivered to her door. Dkt. # 37. But, as USPS has argued, none of the providers have addressed the reasonable accommodations that USPS proposed, and none have deemed those proposed accommodations insufficient. *See* Dkt. ## 33-2, 33-3, 33-4, 33-5, 33-6, 33-7. She also fails to identify any manifest error as to the remaining TRO factors.

Ms. Tucker's Request for Explanation is **DENIED**. Dkt. # 37.

### C. 10-05-2020 New Emergency Filing (Third Request for TRO)

Like a preliminary injunction, issuance of a TRO is "an extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Under Federal Rule of Civil Procedure 65(b), a party seeking a TRO must make a clear

ORDER – 6

showing (1) of a likelihood of success on the merits, (2) of a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of hardship tips in her favor, and (4) that a temporary restraining order in is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (articulating standard for preliminary injunction); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical").

A plaintiff bringing suit under Section 504 must show that (1) she is a qualified individual with a disability, (2) she was denied "a reasonable accommodation that [she] needs in order to enjoy meaningful access to the benefits of public services," (3) she was denied the benefits of a program by reason of the disability, and (4) the program providing the benefit receives federal financial assistance. *A.G. v. Paradise Valley Unified School Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016); *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010). "There is no significant difference in analysis of the rights and obligations created by the A[mericans with Disabilities Act] and the Rehabilitation Act." *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999). In applying the ADA, the Ninth Circuit has held that, because the plaintiff bears the burden of establishing a violation, she must "establish the existence of specific reasonable accommodations that [the defendant] failed to provide." *Memmer v. Marin Cty. Courts*, 169 F.3d 630, 633 (9th Cir. 1999). Moreover, the plaintiff must show that accommodations offered by the defendant were not reasonable. *Id.* at 634; *see also Alexander v. Choate*, 469 U.S. 287, 300 (1985); *McElwee v. Cty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) ("Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation [s]he requests or the accommodation of h[er] choice.").

Ms. Tucker identifies the accommodation that she prefers—delivery of large packages to her door, whether the packages are addressed to her street address or her post

ORDER – 7

office box—but she does not explain why the accommodations offered by USPS are not reasonable. Under the Rehabilitation Act, Ms. Tucker is owed a "reasonable accommodation," not her preferred accommodation. USPS proposes several ways in which Ms. Tucker can retrieve her packages with little or no contact, mitigating her chances of infection. This includes home delivery (so long as a package is addressed to Ms. Tucker's street address) and what amounts to curbside delivery (in which a post office employee would deposit a package into the trunk of Ms. Tucker's vehicle). Dkt. # 19-2. Ms. Tucker has the burden to show that these accommodations are not reasonable. She fails to meet that burden. Indeed, Ms. Tucker has failed to meet this burden in her first, second, and now third request for a TRO.

Of course, the Court is sympathetic that Ms. Tucker has recently fallen and that her knees "are in worse shape than before." Dkt. # 40. But that does not change the analysis. She does not claim that she can no longer drive to the post office, where an employee could deposit her large packages to the trunk of her vehicle. And she does not claim that the injury prevents her from addressing her packages to her street address so that they may be delivered to her front door.

Ms. Tucker also fails to show why she is entitled to the new injunctive relief that she requests, which is essentially a request to have her packages placed in some parcel lockers and not others. Dkt. # 40 at 2. Ms. Tucker hardly explains how this new request is related to her disabilities at all, let alone how it is related to her recent injury.

Thus, Ms. Tucker fails to show a likelihood of success on the merits of her Section 504 claim. The Court also finds that she has not raised "serious questions going to the merits" of her claim. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Failure to satisfy this prong is fatal to Ms. Tucker's motion. *Winter* requires a plaintiff to establish all four prongs. *Haskell v. Harris*, 745 F.3d 1269, 1271 (9th Cir. 2014). The first prong, likelihood of success on the merits, is the "most important," and when "a plaintiff has failed to show the likelihood of success on the merits, [courts] 'need

ORDER – 8

not consider the remaining three [*Winter* elements].'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (second alteration in original) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)).

To be sure, however, the Court will briefly address the final three *Winter* prongs. Ms. Tucker has not shown irreparable harm. The Court acknowledges that if Ms. Tucker does not receive her packages at all or if she is forced to retrieve oversized packages from the lobby, then considerable harm could arise. But that is not the issue here: the issue that Ms. Tucker presents is whether she will suffer irreparable harm if she does not receive her packages in the manner that she prefers. The answer to that is no. At this stage, the reasonable accommodations offered by USPS would appear to adequately deliver Ms. Tucker's packages while maintaining her safety. Lastly, Ms. Tucker does not explain how the balance of equities tips in her favor or how the public interest favors an injunction.

In sum, Ms. Tucker's 10-05-2020 New Emergency Filing (Third Request for TRO) is **DENIED**. Dkt. # 40.

## IV.  CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Request Regarding Summons (Dkt. # 34), Plaintiff's Request for Explanation (Dkt. # 37), and Plaintiff's 10-05-2020 New Emergency Filing (Dkt. # 40).

DATED this 9th day of November, 2020.

The Honorable Richard A. Jones
United States District Judge

ORDER – 9